UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

OKEY GARRY OKPALA,                    )
                                      )
            Plaintiff,                )
                                      )
      v.                              )Civil Action No. 06-1530 RJL
                                      )
FEDERAL BUREAU OF PRISONS, <u>et al.</u>,)
                                      )
            Defendants.               )
_____)

<u>MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT</u>

      Defendants, by and through counsel, hereby move pursuant to

Fed. R. Civ. P. 12(b)(1), (3) and (6) to dismiss this action.  In

the alternative, the Defendants move for summary judgment in

their favor, pursuant to Fed. R. Civ. P. 56.[1]  The Court is

_____

      [1] To the extent that the Court may rely on matters outside
of the pleadings, the Court may enter summary judgment in favor
of the defendants.  <u>See</u> Fed. R. Civ. P. 12(b); 56.  Plaintiff
should take notice that any factual assertions contained in the
documents in support of this motion may be accepted by the Court
as true unless Plaintiff submits his own affidavit or other
documentary evidence contradicting the assertions in the
documents.  <u>See</u> <u>Neal</u> v. <u>Kelly</u>, 963 F.2d 453, 456-57 (D.C. Cir.
1992), Local Rule 7(h); 56.1 and Fed. R. Civ. P. 56(e), which
provides as follows:

      Supporting and opposing affidavits shall be made on
      personal knowledge, shall set forth such facts as would
      be admissible in evidence, and shall show affirmatively
      that the affiant is competent to testify to the matters
      stated therein.  Sworn or certified copies of all
      papers or parts thereof referred to in an affidavit
      shall be attached thereto or served therewith.  The
      court may permit affidavits to be supplemented or
      opposed by depositions, answers to interrogatories, or
      further affidavits.  When a motion for summary judgment
      is made and supported as provided in this rule, an
      adverse party may not rest upon the mere allegations or
      denials of the adverse party's pleading, but the
      adverse party's response, by affidavits or as otherwise

respectfully referred to the accompanying memorandum of points
and authorities in support of this motion and to the memorandum
in support of Defendants' Motion To Transfer, filed on November
22, 2006.

                    Respectfully submitted,


                    _____
                    JEFFREY A. TAYLOR, DC Bar #498610
                    United States Attorney


                    _____
                    RUDOLPH CONTRERAS, DC Bar #434122
                    Assistant United States Attorney


                    _____
                    W. MARK NEBEKER, DC Bar #396739
                    Assistant United States Attorney

---

        provided in this rule, must set forth specific facts
        showing that there is a genuine issue for trial.  If
        the adverse party does not so respond, summary
        judgment, if appropriate, shall be entered against the
        adverse party.

Fed. R. Civ. P. 56(e).

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

OKEY GARRY OKPALA,                    )
                                      )
            Plaintiff,                )
                                      )
      v.                              )Civil Action No. 06-1530 RJL
                                      )
FEDERAL BUREAU OF PRISONS, <u>et al.</u>,)
                                      )
            Defendants.               )
_____)

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE,
FOR SUMMARY JUDGMENT, AND IN OPPOSITION
TO PLAINTIFF'S REQUEST FOR INTERIM RELIEF

I.  INTRODUCTION

Plaintiff has brought suit against the Federal Bureau of Prisons ("BOP") and the Federal Correctional Institution where he is incarcerated in Talladega, Alabama, claiming that various rights have been violated because his meal choice of a "common fare" diet at FCI Talladega does not include sufficient fresh produce items.  <u>See</u> Complaint, ¶¶ 1, 4.[1]  Plaintiff argues that FCI Talladega secured BOP permission to deviate from the earlier Common Fare diet only during a kitchen renovation, which has been completed.  Thus, according to Plaintiff, the policy waiver having lapsed, he should receive fresh vegetables on the Common

_____

[1]  Plaintiff admits that fresh produce is available under other dietary options at the institution.  Complaint, ¶ 4.  And, Plaintiff supplemented the original complaint with a proffered newspaper article which notes, <u>inter alia</u>, that "Frozen vegetables and fruits retain the same nutrients as fresh. . ."  Supplemental Complaint For Declaratory Judgment And Injunctive Relief, Attachment at 2.

Fare diet again, rather than the different diet offered on a
Pilot Program.  Plaintiff raises his claims under the
Administrative Procedure Act ("APA"), 5 U.S.C. § 553, as well as
the Fifth, Eighth and Fourteenth Amendments to the Constitution.
Complaint at 1-4.

Nowhere does Plaintiff claim that his religious beliefs
require fresh fruits or vegetables.  Rather, Plaintiff has
described himself as a Jehovah's Witness, and claims that his
concern with the diet offered generally is that he cannot eat
meat unless it has been properly slaughtered, which includes
having the blood properly drained from chickens.  June 13, 2001
Religious Diet Interview Questionnaire (Exhibit 2).  The
questionnaire Plaintiff completed does not mention any religious
concern with frozen or prepared fruits or vegetables.  See id.

In any event, despite Plaintiff's claim that further
authorization is required to keep the Pilot Program in place, FCI
Talladega has now secured permission to extend the new Common
Fare diet beyond the earlier-established period.  See June 30,
2006 Memorandum from Medical Director Newton Kendig, M.D.
(Exhibit 1 at 3).  FCI Talladega has verified that there are
legitimate penological reasons for continuing the pilot menu at
the institution.  Specifically, the Pilot Menu contains
commercially prepared, religiously certified meals that are ready
to heat and eat.  Utilizing this menu eliminates the use of

- 2 -

knives to prepare and serve the food on the Common Fare menu.
See Declaration of Thomas Issermoyer ("Issermoyer Decl."), ¶¶ 4-
5.  A reduction in the number of knives inmates must use reduces
the probability that serious assaults will take place in the food
preparation area.  Id., ¶ 5.  In addition, serving this menu
eliminates the need to prepare raw foods in the religious diet
kitchen, reducing the level of staff supervision required in this
area and allowing closer supervision of the larger aspects of the
institution.  Id.  At the same time, Plaintiff has, himself,
provided evidence that "Frozen vegetables and fruits retain the
same nutrients as fresh. . ."  Supplemental Complaint For
Declaratory Judgment And Injunctive Relief, Attachment at 2.

As set forth herein, Plaintiff has failed to state a claim
for relief and certainly cannot establish an entitlement to
interim injunctive relief.

## II.  ARGUMENT

Plaintiff seeks declaratory and injunctive relief, requiring
Defendants to "reinstate the regular Common Fare Menu that
contained the aforementioned fresh produce items."  Complaint at
6.  But, Plaintiff is not entitled to any relief.

As the Court of Appeals has explained, in considering a
plaintiff's request for preliminary relief:

> a court must weigh four factors: (1) whether the
> plaintiff has a substantial likelihood of success on
> the merits; (2) whether the plaintiff would suffer
> irreparable injury were an injunction not granted; (3)

> whether an injunction would substantially injure other
> interested parties; and (4) whether the grant of an
> injunction would further the public interest.

Al-Fayed v. Central Intelligence Agency, 254 F.3d 300, 303 (D.C.
Cir. 2001); see also Taylor v. Resolution Trust Corp., 56 F.3d
1497, 1505-06 (D.C. Cir. 1995); NTEU v. United States, 927 F.2d
1253, 1254 (D.C. Cir. 1991); Randolph-Sheppard Vendors v.
Weinberger, 795 F.2d 90, 110 (D.C. Cir. 1986); Washington Metro.
Area Transit Comm'n v. Holiday Tours, Inc., 559 F.2d 841, 843
(D.C. Cir. 1977); Virginia Petroleum Jobbers Ass'n v. FPC, 259
F.2d 921, 925 (D.C. Cir. 1958).  Plaintiff cannot meet the heavy
burden for obtaining emergency injunctive relief.  "As a
preliminary injunction is an extraordinary remedy, the right to
relief must be clear and unequivocal."  SCFC ILC, Inc. v. Visa
USA, Inc., 936 F.2d 1096, 1098 (10th Cir. 1991) (citation
omitted).

Plaintiff has not met the exacting requirements for an
injunction.  First, he has no likelihood of success on the
merits.  Second, Plaintiff will not suffer irreparable injury if
an injunction is not granted.  Third, the grant of a preliminary
injunction could substantially compromise inmate safety.  Fourth,
the injunction Plaintiff seeks would not further the public
interest.

- 4 -

A.  PLAINTIFF HAS NO LIKELIHOOD OF SUCCESS ON THE MERITS; RATHER HIS CLAIMS SHOULD BE DISMISSED

1.  Because Plaintiff Has Suffered No Injury in Fact, He Lacks Standing and Has Otherwise Failed to State a Valid Claim under the Facts Presented

"No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies.  The concept of standing is part of this limitation."  Simon v. Eastern Kentucky Welfare Rights Organization, 426 U.S. 26, 37 (1976) (citation omitted).  As the Supreme Court has explained, to achieve standing, a plaintiff must meet three requirements:

> First, the plaintiff must have suffered an injury in fact-an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical.  Second, there must be a causal connection between the injury and the conduct complained of-the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.  Third, it must be likely, as opposed merely speculative, that the injury will be redressed by a favorable decision.

Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992) (footnote, citations, quotation marks, ellipses, and brackets omitted).

Plaintiff lacks standing because he has not suffered an injury in fact.  See Lujan v. Defenders of Wild Life, 504 U.S. 555 (1992).  "For a plaintiff to have standing, the injury alleged must be actual or imminent, not conjectural or

- 5 -

speculative; such injury must, at the very least, be 'certainly impending'. . . .  When a plaintiff seeks to avoid injuries that are merely speculative or to require a court to infer what events might transpire to cause plaintiff harm in the future, the injury in fact requirement is not met." LPA, Inc. v. Chao, 211 F.Supp. 2d 160, 164 (D.D.C. 2002); see also, Alamo v. Clay, 137 F.3d 1366, 1370 (D.C. Cir. 1998) (injury in the form of stigma resulting from the denial of parole was at best a speculative injury); J. Roderick MacArthur Foundation v. FBI, 102 F.3d 600, 606 (D.C. Cir. 1996) (harm must be "certainly impending"; alleging that plaintiff might suffer an injury at some unknown time is too speculative to warrant standing).

Plaintiff claims that "the continued promulgation of the Pilot Menu without the proper authorization constitutes a violation of 5 U.S.C. § 553, et seq. " Complaint, ¶ 4.  Insofar as Plaintiff may be claiming that he is entitled to a return to the former Common Fare menu in light of the limits placed on the earlier waiver, his claim is moot.

> Article III, s 2, of the Constitution confines federal courts to the decision of "Cases" or "Controversies." Standing to sue or defend is an aspect of the case or controversy requirement.
>
>                   * * *
>
> An interest shared generally with the public at large in the proper application of the Constitution and laws will not do.
>
>                   * * *

> The standing Article III requires must be met by
> persons seeking appellate review, just as it must be
> met by persons appearing in courts of first instance.
>
> * * *
>
> To qualify as a case fit for federal-court
> adjudication, an actual controversy must be extant at
> all stages of review, not merely at the time the
> complaint is filed.

Arizonans For Official English v. Arizona, 520 U.S. 43, 64-67
(1997) (internal quotations and cases omitted).

FCI Talladega has now secured the necessary approval to continue their use of the new Common Fare diet. See Request and Approval of Policy Waiver (Exhibit 1 at 3). Thus, Plaintiff's claim that the earlier waiver has expired, is moot.[2]

Plaintiff contends that the Pilot Menu currently served at FCI Talladega, which menu has been substituted for an earlier Common Fare menu for prisoners seeking a religious diet, is nutritionally inadequate. He contends that his high blood pressure and high cholesterol require him to maintain a balanced diet which should include specific fresh produce. The only

---

[2] Indeed, if Plaintiff's pleadings were read to challenge Program Statement 4700.04, his claims have been mooted by the intervening adoption of Program Statement 4700.05, which has rescinded Program Statement 4700.04 as of June 12, 2006. See Program Statement 4700.05, at 3. The Court may take judicial notice of such government documents. See Fed. R. Evid. 201; Swierkiewicz v. Sorema, 534 U.S. 506 (2002); Martinez v. Bureau of Prisons, 444 F.3d 620, 625 (D.C. Cir. 2006)(examining dismissal of claim based on BOP Program Statement and noting the availability of the document at  http://www.bop.gov); EEOC v. St. Francis Xavier Parochial School, 117 F.3d 621, 624 (D.C. Cir. (1997).

evidence he presents to substantiate his claim is a Wall Street Journal article which published dietary guidelines recommending daily requirements of fruits and vegetables. See Plaintiff's Supplemental Complaint for Declaratory Judgment and Injunctive Relief (Wall Street Journal July 25, 2006). Plaintiff has presented no medical records or orders from treating physicians supporting his belief that he is required to eat these particular produce items or that the Pilot Menu is inadequate. Nor has Plaintiff alleged that he has exhausted available administrative remedies to secure a medically required diet. See 42 U.S.C. § 1997e(a); Booth v. Churner 532 U.S. 731 (2001) (Prison Litigation Reform Act requires administrative exhaustion). Some of the produce items Plaintiff requests are available on the salad bar. See June 19, 2001 Notification Of Religious Diet Accommodation. Inmate Okpala is free to eat from the salad bar at any time. Id. Furthermore, produce items are subject to seasonal availability. See P.S. 4700.05, Ch. 4, ¶ 2(c). The Pilot Menu has been in use at FCC Coleman and has been nutritionally analyzed by a registered dietitian and found to be nutritionally adequate. See February 4, 2005 Nutritional Analysis (Exhibit 4).[3]

---

[3] The analysis shows that prisoners are provided slightly more food than was optimal (between 109%-112% of the targeted caloric intake), but that leaving a small portion on the prisoner's plate will not reduce the vitamins and nutritional limits below the minimum required, given that the vitamins and

Plaintiff cites <u>Helling</u> v. <u>McKinney</u> 509 U.S. 25, 36 (1993), as the basis for his standing. In that case, the Court noted that "a prison inmate also could successfully complain about demonstrably unsafe drinking water without waiting for an attack of dysentery." This argument is unsound because the Plaintiff is not similarly situated. He has failed to demonstrate that the Pilot Menu is unsafe in any way. Instead, he proffers an article that equates the nutritional value of fresh and frozen foods. Also, Plaintiff has the option of eating the mainline menu which includes some of the particular fruits and vegetables that he desires. <u>See</u> 28 C.F.R. § 548.20. Plaintiff has not suffered any injury with respect to the Pilot Menu and, indeed, his own submissions reflect that his desire for fresh (as opposed to cooked/frozen) fruits and vegetables is nutritionally insignificant. <u>See</u> Supplemental Complaint For Declaratory Judgment And Injunctive Relief, Attachment at 2.

Moreover, Plaintiff's only specified reason for choosing the Common Fare diet in the first place was to avoid eating meat that was not slaughtered as required by the dictates of his religion. <u>See</u> June 13, 2001 Religious Diet Interview Questionnaire (Exhibit 2). Plaintiff has available to him the option of a no-flesh

---

nutrients supplied are supplied in amounts nearly 200% to 300% of the minimum amounts required. Indeed, the nutrient listed in the analysis with the lowest margin above the minimum required is zinc, which was provided at over 120% of the minimum in each weekly test. <u>See</u> Exhibit 4 at 2-4.

alternative from the standard fare menu.  Program Statement
4700.05, Ch. 2, ¶ 7; Ch.4, ¶ 1; Issermoyer Decl., ¶ 6.

In any event, Plaintiff has failed to state a claim under
the undisputed facts presented.  Relying on Plaintiff's own
submissions, Plaintiff cannot establish that he has sustained, or
will sustain, any injury to his health.  Even assuming that
Plaintiff had standing, the BOP Pilot Menu does not have any
negative effect on Plaintiff's health.  Plaintiff has chosen to
take part in the Common Fare Menu that meets or exceeds the daily
dietary requirements of all inmates and may avail himself of the
no-flesh option on the standard fare (or mainline) menu anyway.
Plaintiff may also have access to a Medical Diet, should his
health require such a diet.  See Program Statement 4700.05, Ch.
5.  Any of the diets offered to Plaintiff would meet or exceed
the daily dietary requirements of inmates.  See Id., Ch. 2, ¶ 9;
Ch. 4, ¶ 2; Ch. 5, ¶ 3; February 4, 2005 Nutritional Analysis
(Exhibit 4).

The policy that has been adopted by the institution is
justified by the compelling interest in maintaining security in
BOP institutions within the budgetary constraints placed on the
institution.  See Western Presbyterian Church v. Board of Zoning
Adjustment of D.C., 849 F. Supp. 77 (D.D.C. 1994) (Court granted
preliminary injunction to church because the government could not
show a compelling governmental interest in support of zoning

- 10 -

regulation which precluded church from feeding homeless);
Issermoyer Decl., ¶¶ 3-5.  The Pilot Menu was initiated during a
kitchen renovation, however it was found to reduce food handling
(and the use of knives by inmates), which, in turn, alleviates
security concerns at the institution.  See Issermoyer Decl., ¶¶
4-5.

> 2.   Plaintiff's APA Challenge must be dismissed,
>      because, a BOP program statement is an internal
>      agency guideline not subject to the rigors of the
>      Administrative Procedure Act.

Plaintiff alleges that the BOP's waiver of Program Statement
4700.04, Chapter 7, Certified Food Component is an invalid agency
regulation promulgated without notice and comment in violation of
the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551-53.
Specifically, he claims that FCI Talladega's waiver to Program
Statement 4700.04 allowing for the use of the Pilot Menu should
have been subject to notice and comment before promulgation.
Complaint at ¶ 11.

Pursuant to the APA, before an agency may promulgate
"legislative rules or regulations," it must first provide all
interested parties with notice of the proposed rule and the legal
authority under which the rule is proposed, and it must allow
interested parties to comment and participate in the rulemaking
process.  See 5 U.S.C. §§ 553(b) and (c).  These "legislative
rules and regulations" are those rules that are intended to
"create new law, rights or duties . . . ."  General Motors Corp.

- 11 -

v. <u>Ruckelshaus</u>, 742 F.2d 1561, 1565 (D.C. Cir. 1984), <u>cert</u>. <u>denied</u>, 471 U.S. 1074 (1985).

> An interpretative rule simply states what the administrative agency thinks the statute means, and only "'reminds' affected parties of existing duties." On the other hand, if by its action the agency intends to create new law, rights or duties, the rule is properly considered to be a legislative rule.

<u>Id</u>. at 1565 (citations omitted).  The subsection of the APA requiring notice and comment prior to promulgation of "legislative rules or regulations," however, does not apply "to interpretative rules, general statements of policy, or rules of agency organization, procedure or practice . . . ."  5 U.S.C. § 553(b)(A).  Thus, because a program statement is an "internal agency guideline," it is "not 'subject to the rigors of the [APA], including public notice and comment.'" <u>Phillips</u> v. <u>Hawk</u>, No. 98-5513, 1999 WL 325487 (D.C. Cir. April 14, 1999) (<u>citing</u> <u>Jacks</u> v. <u>Crabtree</u>, 114 F.3d 983, 985 n.1 (9th Cir. 1997), <u>cert</u>. <u>denied</u>, 118 S.Ct. 1196 (1998) and <u>Reno</u> v. <u>Koray</u>, 515 U.S. 50, 61 (1995)).

The BOP's program statements are internal agency interpretations of its statutory regulations -- internal agency statements of explanation that are consistent with the regulations they clarify.  <u>Parsons</u> v. <u>Pitzer</u>, 149 F.3d 734, 738 (7th Cir. 1998).  Such policy statements are not substantive rules, but rather interpretative statements of position, circulated within an agency to provide administrative guidance.

Indeed, the regulations that the program statement is designed to implement provides no substantive protection against a change in how fruits and vegetables are prepared for prisoners. See 28 C.F.R. § 248.20 (providing only that the BOP provide inmates requesting a religious diet "reasonable and equitable opportunity to observe their religious dietary practice within the constraints of budget limitations and the security and orderly running of the institution and the Bureau through a common fare menu."). Accordingly, changes in how foods are prepared are not subject to APA rulemaking requirements. Pelissero v. Thompson, 170 F.3d 442, 447 (4th Cir. 1999). Under 5 U.S.C. § 553(A), formal rulemaking does not apply "to interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice." Interpretive rules are those which "merely clarify or explain existing law or regulations," or are essentially "hortatory and instructional," and "[are] in the form of an explanation of particular terms." American Hosp. Ass'n v. Bowen, 834 F.2d 1037, 1045 (D.C. Cir. 1987). While the label an agency attaches to its pronouncement is not dispositive, a program statement is interpretive where it pronounces a clarification or explanation of a regulation. Gunderson v. Hood, 268 F.3d 1149, 1154 (9th Cir. 2001).

Plaintiff appears to challenge the program statement in question by alleging that it creates new law, rights or duties.

To the contrary, the program statement is no more than an internal agency guideline that is "akin to an 'interpretive rule.'" Reno v. Koray, 515 U.S. at 61 (quoting Shalala v. Guernsey Memorial Hospital, 514 U.S. 87, 99 (1995)).  As such, it constitutes a statement of policy or rules of agency practice or procedure.  In this regard, the program statement simply articulates BOP's general guidance to its wardens concerning inmate access to religiously certified foods.  Although it provides details beyond those set forth in the agency regulations, see 28 C.F.R. § 548.20(a) ("The Bureau provides inmates requesting a religious diet reasonable and equitable opportunity to observe their religious dietary practice within the constraints of budget limitations and the security and orderly running of the institution and the Bureau through a common fare menu.  The inmate will provide a written statement articulating the religious motivation for participation in the common fare program.").  Such guidance is interpretive and not subject to notice and comment under the APA.  Miller v. Henman, 804 F.2d 421 (7th Cir. 1986), cert. denied, 484 U.S. 844 (1987).

    3.   Plaintiff's Fifth Amendment Claim Fails

Plaintiff alleges a Fifth Amendment violation.  This argument fails because the plaintiff has not even specified how he believes the Fifth Amendment has been violated or what component of the amendment is at issue.  However, if the Court

- 14 -

were to construe his complaint as a violation of the Fifth Amendment right to equal protection, the argument still fails because Plaintiff has not proved the existence of purposeful discrimination or, indeed, any discrimination. McCleskey v. Kemp, 481 U.S. 279, 292 (1987). Plaintiff alleges that inmates who choose to eat the standard fare are given access to fresh fruits and vegetables which are not available to those who choose to eat the Pilot Menu now served under the Common Fare diet. The first step in an equal protection analysis is determining what level of review is required. Plaintiff does not claim that this is a fundamental right, that he was denied his request based on his sex, or that he belongs to a suspect class. Therefore, this equal protection analysis requires only a rational basis standard of review. Nordlinger v. Hahn, 505 U.S. 1, 10 (1992). United States v. Virginia, 518 U.S. 515, 532 (1996). "In general, the Equal Protection Clause is satisfied so long as there is a plausible policy reason for the classification," United States Railroad Retirement Bd. v. Fritz, 449 U.S. 166, 174 (1980).

Plaintiff has failed to establish that he is treated any differently from any other similarly situated prisoner. First, if he believes that he would be better treated were he not receiving the Common Fare diet, he may ask to withdraw from the program and partake of the no-flesh option (or any other option) available to him. See 28 C.F.R. § 548.20 ("An inmate who has

been approved for a common fare menu must notify the chaplain in writing if the inmate wishes to withdraw from the religious diet."). Moreover, because Plaintiff, like all other inmates at FCI Talladega who have chosen the Common Fare diet is receiving the Pilot Menu, he is not being treated dissimilarly to anyone else who opts for the Common Fare menu. See Ephraim v. Angelone, 313 F.Supp.2d 569, 573-74 (E.D. Va.), aff'd 03-6411, 2003 WL 21480621 (4th Cir. June 27, 2003). The Court in Ephraim examined a similar claim and concluded as follows:

> Plaintiff claims that Defendants violated his equal protection rights under the Fourteenth Amendment by refusing to provide him with a vegetarian diet that comports with his religious beliefs. To succeed on an equal protection claim, Plaintiff "'must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional and purposeful discrimination.'" Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001). Upon this showing by Plaintiff, "'the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny.'" Id.

> Here, Plaintiff has not made the threshold showing of disparate treatment and intentional discrimination. Plaintiff has not shown that he has been treated differently from other similarly situated inmates at Lunenberg Correctional Center. Plaintiff has provided no evidence that other inmates of his religion have made similar dietary requests, much less that such requests have been granted. Moreover, Plaintiff has not provided any evidence that would even suggest purposeful or intentional discrimination. Absent evidence of differential treatment and intentional discrimination, Plaintiff's equal protection claim cannot survive summary judgment. Accordingly, Defendant's Motion for Summary Judgment should be granted with respect to Plaintiff's equal protection claim.

Ephraim v. Angelone, 313 F.Supp.2d at 573-74.

In any event, the BOP has a rational reason for treating

- 16 -

these two groups of people differently.  The continued use of the
Pilot Menu serves the important penological interest of increased
safety within the institution without unnecessarily increasing
the cost of maintaining security that would be occasioned by the
need to hire more staff.  See Issermoyer Decl., ¶¶ 3-5.  In order
to provide a religiously certified diet, the inmate food
preparation staff must adhere to strict requirements.  For
example, the inmates must use a different set of cutlery and
dishes to prepare the food than those used with the standard
fare.  See Program Statement 4700.05, Ch. 4, ¶ 2.  Because the
Pilot Menu does not require any significant prisoner-conducted
preparation, it reduces the number of kitchen staff required to
prepare meals, the number of knives put into inmate hands, the
need for kitchen supervision, and the likelihood of injury in the
kitchen.  See Issermoyer Decl., ¶¶ 3-5.  Additionally, the
correctional officers that would otherwise provide supervision in
the kitchen can be utilized elsewhere in the institution to
increase overall security.  See id.

    As the Court of Appeals has held, "[p]olicies enacted
pursuant to BOP's statutory mandate to administer the nation's
prisons are entitled to great deference."  Sample v. Bureau of
Prisons, 466 F.3d at 1086, 1089 (D.C. Cir. 2006). See also,
Martinez v. Bureau of Prisons, 444 F.3d 620, 625 (D.C. Cir. 2006)
(noting that the court would be loath to second-guess BOP's
program statement) (citing Bell v. Wolfish, 441 U.S. 520, 531
(1979) and Procunier v. Martinez, 416 U.S. 396, 405 (1974)).  The

decision to utilize the Pilot Menu is directly related to prison administration which is not an issue to be decided by the Court. Therefore, the Court should not interfere with the administrative decision to continue the use of the Pilot Menu.  The Pilot Menu preserves the right of inmates to practice their religion and be provided with nutritionally adequate meals, while increasing prison security.  Such a balance should not be easily disturbed.

     4.  <u>Plaintiff's Eighth Amendment Violation Claim Fails</u>

Plaintiff alleges an Eighth Amendment violation.  However, because the complaint is not specific, the manner in which he believes his Eighth Amendment rights were violated is unclear. Regardless, nothing that he alleges rises to the "extreme depravation" level of an Eighth Amendment violation.  The United States Supreme Court established that "'the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment . . .'" <u>Whitley</u> v. <u>Albers</u>, 475 U.S. 312, 319 (1986) (<u>quoting</u> <u>Ingraham</u> v. <u>Wright</u>, 430 U.S. 651, 670 (1977)) (internal quotation marks omitted).  What is required to establish an "unnecessary and wanton infliction of pain," varies according to the nature of the alleged constitutional violation."  <u>Whitley</u> v. <u>Albers</u>, 475 U.S. at 320.  For instance, extreme deprivations are required for the conditions-of-confinement claim that Plaintiff attempts to pursue.  Because routine discomfort is "part of the penalty that criminal offenders pay for their offenses against society . . . only those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave

- 18 -

to form the basis of an Eighth Amendment violation." <u>Rhodes</u> v. <u>Chapman</u>, 452 U.S. 337, 347 (1981).

Nothing in this Complaint points to this type of violation and dismissal is appropriate. Plaintiff claims, without any support, that the Pilot Menu is nutritionally inadequate for lack of fresh fruits and vegetables, and that it has been continued without adequate authorization. Yet, Plaintiff's own submissions explain that fresh fruits and vegetables have the same nutritional value as frozen. Supplemental Complaint For Declaratory Judgment And Injunctive Relief, Attachment at 2. And Plaintiff has available to him nutritionally adequate food under any of the menu options available to him. <u>See</u> February 4, 2005 Nutritional Analysis (Exhibit 4); Program Statement 4700.05, Chs. 2, 4 and 5; Issermoyer Decl., ¶ 6. Thus, Plaintiff offers no facts to support his theory that FCI Talledega has violated any of his Eighth Amendment rights.

     5.    <u>Plaintiff's Fourteenth Amendment Violation Claim Fails</u>

Plaintiff alleges a Fourteenth Amendment violation. This argument fails because the Fourteenth Amendment is not directly applicable to the Federal government. Rather, it applies directly to the States. <u>See</u> U.S. Const. amend. XIV, § 1; <u>Hampton</u> v. <u>Mow Sun Wong</u>, 426 U.S. 88, 95, 96 S.Ct. 1895, 1901 (1976); <u>see also</u> <u>Bolling</u> v. <u>Sharpe</u>, 347 U.S. 497, 499 (1954); <u>Ruble</u> v. <u>King</u>, 911 F.Supp. 1544, 1553 (N.D. Ga. 1995)(Fourteenth Amendment applies to state actors, not federal actors); <u>Warren</u> v. <u>Stempson</u>,

800 F.Supp. 991, 992 n.5 (D.D.C. 1992), <u>aff'd</u>, 995 F.2d 306 (1992).

      B.   <u>PLAINTIFF HAS NOT DEMONSTRATED THAT HE WILL SUFFER IRREPARABLE INJURY IF AN INJUNCTION IS NOT GRANTED.</u>

In order to obtain interim injunctive relief, Plaintiff also has the burden of demonstrating that he will be "irreparably injured" in the absence of such relief.  The District of Columbia Circuit Court has explained the concept of irreparable injury as follows:

> First, the injury must be both certain and great; it must be actual and not theoretical . . . the party seeking injunctive relief must show that the injury complained of is of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm.
> It is also well settled that economic loss does not, in and of itself, constitute irreparable harm. . . .
>
> Implicit in each of these principles is the further requirement that the plaintiff substantiate the claim that irreparable injury is likely to occur. . . .  Bare allegations of what is likely to occur are of no value since the court must decide whether the harm will in fact occur.

<u>Wisconsin Gas Co.</u> v. <u>FERC</u>, 758 F.2d 669, 674 (D.C. Cir. 1985) (internal quotations and citations omitted, emphasis in original).  Thus, speculative suggestions do not satisfy the Plaintiff's burden.  If the Plaintiff cannot provide concrete evidence that he will be irreparably harmed – <u>i.e.</u>, he will be harmed in a manner that cannot be remedied later – then a preliminary injunction is simply not appropriate.

The party seeking injunctive relief must not only show that the alleged harm "will in fact occur" but must also show that the injury complained of is "of such imminence that there is a clear

- 20 -

and present need for equitable relief to prevent irreparable harm." <u>Wisconsin Gas Co.</u>, 758 F.2d at 674.

Plaintiff has not come close to carrying this burden. There is clearly no imminence of harm in this case. Plaintiff is able to choose from the Pilot Menu, or the mainline menu and also has available to him, if needed, a medical diet. <u>See</u> Program Statement 4700.05, Chs. 2, 4 and 5. Moreover, the menus have been nutritionally analyzed and were found to meet or exceed the daily nutritional needs of inmates. Issermoyer Decl., ¶¶ 3-5; February 4, 2005 Nutritional Analysis (Exhibit 4). In short, because plaintiff has not demonstrated the type of irreparable and imminent harm necessary to warrant emergency relief, his request for an injunction must be denied for this reason alone.

      C.    THE GRANT OF AN INJUNCTION WOULD SUBSTANTIALLY INTERFERE WITH THE RIGHTS OF OTHERS AND NOT FURTHER THE PUBLIC INTEREST.

The third and fourth factors which bear on a claim for injunctive relief, <u>see</u> <u>Al-Fayed</u> v. <u>Central Intelligence Agency</u>, 254 F.3d 300, 303 (D.C. Cir. 2001), weigh against the Plaintiff. Inmates only retain those rights which are consistent with the correctional setting. Prison administrators can thus place restrictions on those rights which are reasonably related to a governmental interest. Most definitely, maintaining the security of the institutions is a legitimate governmental interest.

To grant this plaintiff the relief he is seeking would undermine the prison administrator's authority to make decisions

regarding the availability of resources and the reasonable accommodations that can be done at the institution.  This Court should not second guess the use of the Pilot Menu at FCI Talladega.  The Pilot Menu is a proper substitute for the Common Fare.  For legitimate security reasons, an inmate should not be allowed to request specific foods for his diet or foods prepared in a particular manner.  The security of the prisons requires BOP to have the flexibility to create appropriate menus for all inmates.  To grant Plaintiff the relief he seeks would seriously jeopardize the security of the institution as the BOP would be required to accommodate all inmate requests which seek specific foods as part of a diet, and would reintroduce the use of more knives into the institution, requiring greater staff supervision in the kitchens than are currently needed at certain of FCI Talladega's kitchen facilities.  The preparation of thousands of daily meals requires significant manpower.  To create menus specific to each individual inmate, such as the menu sought by Plaintiff, would create a drain on the resources available to maintain the safety of the institution.  The security risks that would be occasioned by the injunction Plaintiff seeks, are unwarranted.

CONCLUSION

    For these reasons, this action should be dismissed or
summary judgment entered in favor of the Defendants.  No
injunction should issue pending resolution of the claims in the
case.


                         Respectfully submitted,


                         _____
                         JEFFREY A. TAYLOR, DC Bar #498610
                         United States Attorney


                         _____
                         RUDOLPH CONTRERAS, DC Bar #434122
                         Assistant United States Attorney


                         _____
                         W. MARK NEBEKER, DC Bar #396739
                         Assistant United States Attorney

OF COUNSEL:

Mary Kiwanuka
Honor's Attorney
Office of General Counsel
Bureau of Prisons

- 23 -

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

OKEY GARRY OKPALA,                    )
                                     )
            Plaintiff,               )
                                     )
        v.                           ) Civil Action No. 06-1530 RJL
                                     )
FEDERAL BUREAU OF PRISONS, et al.,   )
                                     )
            Defendants.              )
_____)

STATEMENT OF MATERIAL FACTS NOT IN GENUINE DISPUTE

Pursuant to Local Civ. Rule 7(h), Defendants submit that the following facts are not in genuine dispute and they demonstrate that Defendants are entitled to judgment in their favor:

1.  FCI Talladega has now secured permission to extend the new Common Fare diet beyond the earlier-established period.  See June 30, 2006 Memorandum from Medical Director Newton Kendig, M.D.  (Exhibit 1 at 3).

2.  Plaintiff has described himself as a Jehovah's Witness; but Plaintiff's only specified reason for choosing the Common Fare diet in the first place was to avoid eating meat that was not slaughtered as required by the dictates of his religion.  See June 13, 2001 Religious Diet Interview Questionnaire (Exhibit 2) ("My concern is with meat.  My religion lets it up to the individual what they desire to eat."); 28 C.F.R. § 548.20(a) ("The inmate will provide a written statement articulating the religious motivation for participation in the common fare program.").

3.  The Religious Diet Interview Questionnaire completed by Plaintiff does not mention any religious concern with frozen or

prepared fruits or vegetables.  See id.

4.  The Pilot Menu about which Plaintiff complains contains commercially prepared, religiously certified meals that are ready to heat and eat.  See Declaration of Thomas Issermoyer ("Issermoyer Decl."), ¶ 5.

5.  Utilizing the Pilot Menu about which Plaintiff complains eliminates the use of knives to prepare and serve the food on the Common Fare menu.  See Issermoyer Decl., ¶¶ 4-5.

6.  A reduction in the number of knives inmates must use within the institution reduces the probability that serious assaults will take place in the food preparation area.  Id., ¶ 5.

7.  In order to provide a religiously certified diet, the inmate food preparation staff must adhere to strict requirements. For example, the inmates must use a different set of cutlery and dishes to prepare the food than those used with the standard fare.  See Program Statement 4700.05, Ch. 4, ¶ 2 (Excerpt attached as Exhibit 3).

8.  Because the Pilot Menu does not require any significant prisoner-conducted preparation, it reduces the number of kitchen staff required to prepare meals, the number of knives put into inmate hands, the need for kitchen supervision, and the likelihood of injury in the kitchen.  See Issermoyer Decl., ¶¶ 3-5.

9.  Additionally, the correctional officers that would otherwise provide supervision in the kitchen can be utilized elsewhere in the institution to increase overall security.  See

- 2 -

id.

  10. Serving the Pilot Menu eliminates the need to prepare raw foods in the religious diet kitchen, reducing the level of staff supervision required in this area and allowing closer supervision of the larger aspects of the institution. Id.

  11. As reflected in Plaintiff's submissions, "Frozen vegetables and fruits retain the same nutrients as fresh. . ." Supplemental Complaint For Declaratory Judgment And Injunctive Relief, Attachment at 2.

  12. At least some of the produce items Plaintiff requests are available on the salad bar, but produce items are subject to seasonal availability. See P.S. 4700.05, Ch. 4, ¶ 2(c); June 19, 2001 Notification Of Religious Diet Accommodation (Exhibit 3).

  13. Plaintiff is free to eat from the salad bar at any time. See June 19, 2001 Notification Of Religious Diet Accommodation (Exhibit 2 at 2.

  14. The Pilot Menu has been in use at FCC Coleman and has been nutritionally analyzed by a registered dietitian and found to be nutritionally adequate. See February 4, 2005 Nutritional Analysis (Exhibit 4).

  15. A true and accurate copy of the nutritional analysis performed on the Common Fare meals in 2005 accompanies this filing as Exhibit 4. Id.

  16. Specifically, the nutritional analysis performed on the Common Fare meals in 2005 shows that prisoners are provided slightly more food than was optimal (between 109%-112% of the

- 3 -

targeted caloric intake), but that leaving a small portion on the prisoner's plate will not reduce the vitamins and nutritional limits below the minimum required, given that the vitamins and nutrients supplied are supplied in amounts nearly 200% to 300% of the minimum amounts required. <u>See</u> February 4, 2005 Nutritional Analysis (Exhibit 4) at 1-4.

17.  Indeed, the nutrient listed in the analysis with the lowest margin above the minimum required is zinc, which was provided at over 120% of the minimum in each weekly test.  <u>See</u> <u>id</u>. at 2-4.

18.  Plaintiff has available to him the option of a no-flesh alternative from the standard fare menu.  Program Statement 4700.05, Ch. 2, ¶ 7; Ch. 4, ¶ 1; Program Statement 4700.05, Chs. 2, 4 and 5; Issermoyer Decl., ¶ 6.


                    Respectfully submitted,


                    _____
                    JEFFREY A. TAYLOR, DC Bar #498610
                    United States Attorney


                    _____
                    RUDOLPH CONTRERAS, DC Bar #434122
                    Assistant United States Attorney


                    _____
                    W. MARK NEBEKER, DC Bar #396739
                    Assistant United States Attorney


                          - 4 -

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that service of the foregoing Defendants' Motion To Dismiss Or, In The Alternative, For Summary Judgment, supporting memorandum, statement of material facts and a proposed order has been made by mailing copies thereof to:

OKEY GARRY OKPALA
#43667-019
P.O. Box 1000
Talladega, AL  35160

on this 17th day of January, 2007.

_____
                    W. MARK NEBEKER, DC Bar #396739
                    Assistant United States Attorney
                    Civil Division
                    555 4th Street, N.W.
                    Washington, DC  20530
                    (202) 514-7230